**RIORDAN J. ZAVALA, ESQ. - SBN 143870**
Law Offices of Riordan J. Zavala
P.O. Box 1061
Placentia, CA 92871
(714) 996-5168
e-mail: rjzlaw@adelphia.net

Attorney for Debtors

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA—RIVERSIDE DIVISION

| | |
|---|---|
| In re:<br><br>Coastline Manufacturing, LLC<br><br>Debtor.<br><br>And related cases. | **Case No. 6:09-bk-28324- BB**<br>Chapter 11<br>Assigned: Hon. Sheri Bluebond<br><br>**DEBTORS' MOTION FOR COURT AUTHORIZATION OF USE OF CASH COLLATERAL.**<br><br>Date: 08/20/09<br>Time: 2:00 p.m.<br>Place: Crtrm. 1475<br><br>[Fed. R. Bankr. P. 4001(b); 11 USC 363(c)(2)(B), (c)(3)] |

**TO ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:**

## MOTION

**1.    Statement of the Relief Requested**

Debtors seek an order to permit them to use such property of debtor's respective estates in the ordinary course of business, as is necessary, to avoid immediate and irreparable harm to said estates pending a final hearing on the matter, in the amount of $317,357.17, to include affiliated debtors in related cases 6:09-bk-28325-BB-- In re Elite Window Corporation ("Elite"), 6:09-bk-28326-BB-- In re Magna Window Corporation ("Magna"), 6:09-bk-28327-BB-- In re Pacific Window Corporation ("Pacific"), 6:09-bk-28328-BB-- In re Pac Bay Window, LLC ("Pac Bay"), and 6:09-bk-28330-BB, In re Window Logic Corp. ("Window Logic").   In addition, debtors

-1-

request a prompt final hearing on the use of cash collateral in this matter and related cases, beyond this preliminary hearing and request for such use, as and when scheduled by this court.

**2.    Entity with Interest in Cash Collateral**

Textron Financial Corporation ("Textron")
333 City Blvd. West, 17th Floor
Orange, CA 92868

There is a Demand letter advanced by Textron dated 07/02/09 for $2,260,332.00 referencing a Loan and Security Agreement between alleged borrowers/debtors Coastline, Pac Bay, Magna, and Elite. Debtors believe Textron asserts a secured interest in their A/R, Inventory, and Equipment. With regard to the issues of validity, priority, or extent and/or value of such interest held by Textron, debtors make no concession.

**3.    Purposes for the Use of Cash Collateral**

Per the accompanying declaration of David Garthwaite at paragraphs 6-9 to wit:

"6.    As previously indicated, payroll went unmet Friday, 08/14. We pay on a weekly basis and accrue the expense for a one–week period. At this point our employees are unpaid for the week pre-petition ending 08/08/09,[1] and last week post 08/11. Attached as Exhibit B is a true and correct computation of payroll owed to our individual employees, by name, <u>post-petition for the period 08/11—08/14</u>. The totals contained therein are incorporated in Exhibit C, which is a true and correct copy of expected <u>post-petition</u> Emergency Cash Expenditures. All employees are absolutely essential to the continued operational viability of the businesses. Employees and staff have been kept at a minimum operational level. Hours have been reduced to meet demand.

Any further continued delay on payroll will result in employees leaving their jobs. This will cause a delay in fulfilling the contracts made with our customers, and constitute a breach of contract, which could result in cancellation and non-payment.

---

[1] We intend to bring an appropriate motion to obtain court permission to pay our employees for those pre-petition wages.

-2-

"7.    Exhibit C represents <u>post-petition</u> Emergency Cash Expenditures for the next 15 days for the operational entities Window Logic, Pac Bay, Coastline, and Elite, all vitally necessary to keep operations functioning.  Utilities, while listed, do not take account of any post-petition section 366 additional required security deposits.   Rent due to the landlord has been unpaid since July 1 due to Textron's refusal to fund that expenditure.  That money is owed to my father's trust, the David Garthwaite Family Trust.   And, that amount is accumulating post-petition at the rate of $2,860.27 per day, which reflects pre-petition rental rates for the two facilities.   The total estimated use of cash collateral through 08/31/09 is $317,357.17.

"8.    As a manufacturing concern, it is absolutely essential to maintain existing relationships with our critical vendors, as well as to retain the supplies necessary to continue production to meet specification standards in our existing contracts with builders. Accordingly, we have listed these various entities with the estimated amounts to be paid out on materials to be received post-petition.  We expect these suppliers to require COD payment for such deliveries.

"9.    Lastly, we have an absolute necessity to pay contract labor through Elite, for the installation of our finished goods on various job sites.  If not paid, future products would not be installed in the units.  Once again, this would constitute a breach of contract with the builder.  Additionally, these outside contractors have the ability to lien the various jobs in order to obtain payment for their services on those jobs; and, we remain liable as well.

**4.    Material Terms and Duration of Use of Cash Collateral**

The cash collateral sought by way of this preliminary request covers the time frame through 08/31/09 only, and then only for such amounts as the court may order to prevent immediate and irreparable harm to debtor's respective estates.   Accordingly, we seek leave of the court to address this issue in further detail, through further briefing of this particular 4001(b)(1) requirement. In the alternative, we defer to the court with respect to "material terms" on this use. However, the court should note by way of Ex. A—Cash Receipts and Disbursements, and Ex. D-- Invoiced Sales, that this amount represents only 47% of invoiced sales for this month; and, it is unclear how much property of the debtors Textron is in possession of, which, it has yet to return. Debtors will have approximately $300,000.00 in various DIP accounts at the time of this hearing.

Clearly, there will be an ongoing need by debtors for the use of cash collateral for the duration of this process and up to Plan approval.

**5.    Cash Payments/Adequate Protection**

Once again, per the accompanying declaration of David Garthwaite, now at paragraphs 11--14 to wit:

"11.    Exhibit A, which is a true and correct copy of the Pro Forma Cash Receipts and Disbursements for the months August through October represents projected ordinary and necessary expenses for operation of the businesses, which will average approximately $633,800.00 per month, and which constitute the various needs for the use of the cash collateral at issue.  <u>Receipts are projected to average $660,000/mo. for that same period, leaving approximately $26,000/mo., available for periodic cash payments to Textron.  In addition, there may be additional flexibility in this regard with respect to the $35,000 ongoing payment owed to the landlord on the Sacramento facility.</u>

"12.    Attached as Exhibit D, is a true and correct copy of Invoiced Sales, on a month by month basis for the businesses, going back to 2004.  What it reflects for the year 2009 is that from the monthly trough in February at $373,000.00, <u>sales have steadily improved on a month by month basis to the point where we are beyond break-even</u>, as reflected in the previous paragraph.

"13.    Attached as Exhibit E, is a true and correct copy of the consolidated balance sheet for the businesses as of 06/30/09.  <u>As to the assets to which Textron claims a security interest underlying its $2.26 million loans, term and revolving, i.e. A/R, inventory, and equipment, there exists a substantial equity cushion to Textron's interest, inasmuch as the ongoing enterprise value of each is $1.5 million, $4.78 million and $2.22 million, respectively, for a total $8.51 million.</u>  It is unclear what the liquidation value of the aforementioned assets would be.

"14.    It is my understanding, based upon e-mails that were transmitted to me from my counsel, between himself and counsel for Textron, that Textron, indirectly by way of <u>JP Morgan Chase, is in possession or control of an unspecified amount of property of the debtor's estates that it was directed to return to the businesses/debtors by my counsel on the filing of the petitions with the imposition of the automatic stay</u>, through a notice of

-4-

bankruptcy filing he had advanced to JP Morgan Chase and its representatives.  None of those monies have yet to be returned.  Notwithstanding that fact, <u>debtors will have approximately $300,000.00 in various DIP accounts at the time of this hearing</u>.

## 6.  Conclusion

Based upon the aforementioned motion, declarations and exhibits advanced in support thereof, debtors request an immediate order issue to allow court authorization of cash collateral in the amount of $317,357.17, in order to avoid immediate and irreparable harm to debtor's respective estates pending a final hearing on the matter, in the amount of $317,357.17, to include affiliated debtors in related cases 6:09-bk-28325-BB-- In re Elite Window Corporation ("Elite"), 6:09-bk-28326-BB-- In re Magna Window Corporation ("Magna"), 6:09-bk-28327-BB-- In re Pacific Window Corporation ("Pacific"), 6:09-bk-28328-BB-- In re Pac Bay Window, LLC ("Pac Bay"), and 6:09-bk-28330-BB, In re Window Logic Corp. ("Window Logic").   In addition, debtors request a prompt final hearing on the use of cash collateral in this matter and related cases, beyond this preliminary hearing and request for such use, as and when scheduled by this court.

Dated: 08/18/09                                        By: /s/ <u>Riordan J. Zavala, Esq.</u>
                                                                    Attorney for Debtors