**RIORDAN J. ZAVALA, ESQ. - SBN 143870**
Law Offices of Riordan J. Zavala
P.O. Box 1061
Placentia, CA 92871
(714) 996-5168
e-mail: rjzlaw@adelphia.net

Attorney for Debtors

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA—RIVERSIDE DIVISION

| | |
|---|---|
| In re:<br><br>Coastline Manufacturing, LLC<br><br>Debtor.<br><br>And related cases. | **Case No. 6:09-bk-28324- BB**<br>Chapter 11<br>Assigned: Hon. Sheri Bluebond<br><br>**DECLARATION OF DAVID GARTHWAITE IN SUPPORT OF DEBTORS' MOTION FOR COURT AUTHORIZATION OF USE OF CASH COLLATERAL.**<br><br>Date: 08/20/09<br>Time: 2:00 p.m.<br>Place: Crtrm. 1475<br><br>**[Fed. R. Bankr. P. 4001(b); 11 USC 363(c)(2)(B), (c)(3)]** |

**TO ALL INTERESTED PARTIES AND THEIR ATTORNEYS OF RECORD:**

**STATEMENT OF FACTS— DECLARATION OF DAVID GARTHWAITE**

I, David Garthwaite declare:

I am the managing member of debtor Coastline Manufacturing, LLC (hereinafter "Coastline") in the above-entitled matter, as well as of related debtor Pac Bay Window, LLC("Pac Bay"); and President and CEO of corporate related debtors Elite Window Corporation ("Elite"), Magna Window Corporation("Magna") , Pacific Window Corporation ("Pacific"), and Window Logic Corp ("Window Logic").  I come forward, on behalf of one and all, jointly and severally, to state I know all matters and facts set forth herein to be true of my own personal knowledge, except

-1-

those stated upon information and belief; and as to those, I believe them to be true. If called as witnesses, I could and would competently testify thereto.

**Preliminary Facts**

1. We are a window and door manufacturing concern, in business for over 20 years, with a 150,000 sq. ft. facility in Banning, and another 100,000 sq. ft. distribution facility in Sacramento. Coastline employs 52 line employees; Window Logic employs 15 staff employees, including myself and my wife[1]; and, we have 2 employees managing the Sacramento facility. I am the sole owner of Window Logic, which has a 51% interest in Coastline and Pac Bay. I own the other 49% interest individually in those two entities; and, 100% interest in Elite, Magna, Pacific, and Window Logic. The two facilities are owned by my father's trust, i.e. the David Garthwaite Family Trust.

2. After attempted negotiations to modify loan terms with secured creditor Textron Financial (who had breached on its obligation to continue funding a revolving line of credit with the companies) failed, it initiated state court proceedings on or about Monday, 08/10/09, and attempted to have a receiver appointed on Tuesday, 08/11.

3. That morning, before the fact of any appointment, I caused to be initiated on behalf of all of the aforementioned entities, emergency Chapter 11 proceedings in the U. S. Bankruptcy Court for the Central District of California, Riverside Division. The court is respectfully invited to take judicial notice of the court's files with respect to each of the above-named entities, to include the corporate resolutions to file, and statement of related cases, filed with the court on Friday, 08/14.

4. On Wednesday, 08/12, at 3:55 p.m., at our counsel's request, I provided the attached Exhibit A, which is a true and correct copy of the Pro Forma Cash Receipts and Disbursements on the businesses, for the months of August through October, to be transmitted to opposing counsel for the purpose of attempting to enter into a use of cash collateral stipulation for court approval.

---

[1] We are aware of the requirements of LBR 2014-1; and, accordingly, will follow same.

-2-

On information and belief, that document was transmitted to opposing counsel, with our counsel's request for such a stipulation at 5:19 p.m. that same day; and on further request for same by opposing counsel at 8:26 a.m., on Thursday, 08/13, at 9:55 a.m.

5.   After no response was received to the aforesaid request, payroll went unmet on Friday, 08/14. On further information and belief, on Saturday morning at 8:25 a.m., opposing counsel notified our counsel "[they were] not going to agree to the use of cash collateral." Hence, the need to come forward to the court for court authorization of such use.

**<u>Re: Preliminary Hearing Need and Prospective Use of Cash Collateral</u>**

6.   As previously indicated, payroll went unmet Friday, 08/14. We pay on a weekly basis and accrue the expense for a one–week period. At this point our employees are unpaid for the week pre-petition ending 08/08/09,[2] and last week post 08/11. Attached as Exhibit B is a true and correct computation of payroll owed to our individual employees, by name, <u>post-petition for the period 08/11—08/14</u>. The totals contained therein are incorporated in Exhibit C, which is a true and correct copy of expected <u>post-petition</u> Emergency Cash Expenditures. All employees are absolutely essential to the continued operational viability of the businesses. Employees and staff have been kept at a minimum operational level. Hours have been reduced to meet demand.

Any further continued delay on payroll will result in employees leaving their jobs. This will cause a delay in fulfilling the contracts made with our customers, and constitute a breach of contract, which could result in cancellation and non-payment.

7.   Exhibit C represents <u>post-petition</u> Emergency Cash Expenditures for the next 15 days for the operational entities Window Logic, Pac Bay, Coastline, and Elite, all vitally necessary to keep operations functioning. Utilities, while listed, do not take account of any post-petition section 366 additional required security deposits. Rent due to the landlord has been unpaid since July 1 due to Textron's refusal to fund that expenditure. That money is owed to my father's trust, the David

---

[2] We intend to bring an appropriate motion to obtain court permission to pay our employees for those pre-petition wages.

-3-

Garthwaite Family Trust.  And, that amount is accumulating post-petition at the rate of $2,860.27 per day, which reflects pre-petition rental rates for the two facilities.   The total estimated use of cash collateral through 08/31/09 is $317,357.17.

8. As a manufacturing concern, it is absolutely essential to maintain existing relationships with our critical vendors, as well as to retain the supplies necessary to continue production to meet specification standards in our existing contracts with builders.  Accordingly, we have listed these various entities with the estimated amounts to be paid out on materials to be received post-petition.  We expect these suppliers to require COD payment for such deliveries.

9. Lastly, we have an absolute necessity to pay contract labor through Elite, for the installation of our finished goods on various job sites.  If not paid, future products would not be installed in the units.  Once again, this would constitute a breach of contract with the builder. Additionally, these outside contractors have the ability to lien the various jobs in order to obtain payment for their services on those jobs; and, we remain liable as well.

**Re: Material Terms and Duration of Use of Cash Collateral**

10. The cash collateral sought by way of this preliminary request covers the time frame through 08/31/09 only, and then only for such amounts as the court may order to prevent immediate and irreparable harm to debtor's respective estates.  Accordingly, we seek leave of the court to address this issue in further detail, through further briefing of this particular 4001(b)(1) requirement. In the alternative, we defer to the court with respect to "material terms" on this use.

**Re:    Cash Payments/Adequate Protection Re: Adequate Protection**

11. Exhibit A, which is a true and correct copy of the Pro Forma Cash Receipts and Disbursements for the months August through October represents projected ordinary and necessary expenses for operation of the businesses, which will average approximately $633,800.00 per month, and which constitute the various needs for the use of the cash collateral at issue. Receipts are projected to average $660,000/mo. for that same period, leaving approximately $26,000/mo., available for periodic cash payments to Textron.  In addition, there may be

-4-

additional flexibility in this regard with respect to the $35,000 ongoing payment owed to the landlord on the Sacramento facility.

12. Attached as Exhibit D, is a true and correct copy of Invoiced Sales, on a month by month basis for the businesses, going back to 2004. What it reflects for the year 2009 is that from the monthly trough in February at $373,000.00, sales have steadily improved on a month by month basis to the point where we are beyond break-even, as reflected in the previous paragraph.

13. Attached as Exhibit E, is a true and correct copy of the consolidated balance sheet for the businesses as of 06/30/09. As to the assets to which Textron claims a security interest underlying its $2.26 million loans, term and revolving, i.e. A/R, inventory, and equipment, there exists a substantial equity cushion to Textron's interest, inasmuch as the ongoing enterprise value of each is $1.5 million, $4.78 million and $2.22 million, respectively, for a total $8.51 million. It is unclear what the liquidation value of the aforementioned assets would be.

14. It is my understanding, based upon e-mails that were transmitted to me from my counsel, between himself and counsel for Textron, that Textron, indirectly by way of JP Morgan Chase, is in possession or control of an unspecified amount of property of the debtor's estates that it was directed to return to the businesses/debtors by my counsel on the filing of the petitions with the imposition of the automatic stay, through a notice of bankruptcy filing he had advanced to JP Morgan Chase and its representatives. None of those monies have yet to be returned. Notwithstanding that fact, debtors will have approximately $300,000.00 in various DIP accounts at the time of this hearing.

I declare under penalty of perjury that the foregoing is true and correct; and, that this declaration was executed on 08/18/09 at Banning, California.

                                                                   /s/ David Garthwaite  
                                                                      Managing Member  
                                                                      Coastline Manufacturing, LLC;  
                                                                      and, on behalf of related debtors.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Exhibit A**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Exhibit B**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27   **Exhibit C**
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Exhibit D**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Exhibit E**